**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

---

| | |
|---|---|
| LULA WILLIAMS, *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| v. | )     **Case No. 1:18-mc-45** |
| | ) |
| BIG PICTURE LOANS, LLC, *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

---

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE OBJECTIONS**
**AND COMPEL RESPONSE TO SUBPOENA ISSUED TO ROSETTE, LLP**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Local Rules of the United States Court for the Eastern District of Virginia, Plaintiffs, by counsel, submit this Memorandum in Support of Motion to Strike Objections and Compel Response to Subpoena.

**Background**

On June 22, 2017, Plaintiffs filed this class action against Defendants Big Picture Loans, LLC, Ascension Technologies, Inc., and Matt Martorello. The crux of the Complaint alleges that Martorello established and operated what is commonly referred to as a "rent-a-tribe" business, where a payday lender uses a tribal business as the conduit for illegal loans in an attempt to cloak itself in the privileges and immunities enjoyed by the tribe.[1] The case is currently pending before the Honorable Robert E. Payne, who issued a Memorandum Opinion on July 27, 2018, finding that Big Picture and Ascension do not qualify as an arm of the tribe and, thus, cannot rely on the doctrine of sovereign immunity to prevent this lawsuit. *Williams v. Big Picture Loans, LLC*, 329

---

[1] Nathalie Martin & Joshua Schwartz, *The Alliance Between Payday Lenders and Tribes: Are Both Tribal Sovereignty and Consumer Protection at Risk?*, 69 Wash. & Lee L. Rev. 751, 753 (2012) (providing background on payday loans and describing the rent-a-tribe model as "the most recent incarnation of payday lending companies regulation-avoidance").

F. Supp. 3d 248, 283 (E.D. Va. 2018). In reaching this conclusion, Judge Payne made several findings pertinent to this motion, including that the record showed that Big Picture and Ascension "were intended to be vehicles that would shield Martorello and [his company] from liability," *id.* at 280, and that Martorello had "significant control mechanisms over significant aspects of Ascension's operations," *id.* at 279.

The present motion concerns a subpoena issued by Plaintiffs to Rosette, LLP, the law firm who represented Red Rock, Big Picture, and Ascension in their business dealings with Martorello. Critically, the subpoena does not seek any communications or documents exchanged between Rosette and Big Picture/Ascension. *See* Ex. 1, Nov. 6, 2018 Subpoena to Rosette. Rather, the subpoena is limited to two categories of documents: (1) Rosette's communications with third parties, such as Martorello and his companies, regarding the lending operations and (2) Rosette's documents exchanged with third parties regarding the lending operations. Ex. 1.

The subpoena to Rosette is necessary, in part, because Martorello has identified two attorneys from Rosette as fact witnesses in this case. Ex. 2, Nov. 7, 2018 Amended Initial Disclosures (identifying Karrie Wichtman and Rob Rosette as witnesses).[2] Additionally, the subpoena is also necessary because Big Picture and Ascension acquired Martorello's emails as part of a "sale" of his company in January 2016;[3] and then they destroyed Martorello's emails

---

[2] Karrie Wichtman was a partner at Rosette until August 17, 2018. *See Williams v. Big Picture Loans, LLC*, Case No. 3:17-cv-461-REP-RCY (E.D. Va.), Dkt. Nos. 158 & 159 (withdrawing appearance in this case because she left the law firm of Rosette).

[3] Prior to the creation of Big Picture and Ascension, Defendants made their high-interest loans to consumers in the name of Red Rock Tribal Lending, LLC, who was held out as the "lender." In reality, Martorello's companies, SourcePoint VI, LLC and Bellicose Capital, LLC, received 98% of the revenue on the loans; provided the infrastructure to market, fund, and collect the loans; and controlled the tribal companies' bank accounts. Faced with mounting pressure against similar rent-a-tribe ventures and a cease and desist issued to Red Rock by the State of New York (which was upheld by a district court and the Second Circuit), Martorello "sold" Bellicose and SourcePoint to

shortly thereafter. Although Plaintiffs do not need to prove anything nefarious to obtain relevant information, it is important to note that Judge Payne has already found that "credible evidence" showed that "Martorello and the Tribe looked for ways to restructure Red Rock's lending operation in order to reduce exposure to liability," and the "impetus behind the formation of Big Picture and Ascension was Martorello and Bellicose's desire to avoid liability, more so than the Tribe's interest in starting its own business." *Williams*, 329 F. Supp. at 272. Because none of the parties have access to his emails, Plaintiffs served the subpoena on Rosette, who on behalf of the tribal entities, routinely communicated with Martorello on business matters related to the enterprise. Likewise, as counsel for the lending entities, Rosette exchanged documents and communications with third parties related to the tribal lending enterprise—documents that would be relevant to the litigation.

### Overview of Rosette's Objections

On November 28, 2018, Rosette's counsel sent a letter that raised three objections to the subpoena. First, Rosette objected that the documents sought by the subpoena "are maintained at Rosette's headquarters in Chandler, Arizona," but the subpoenas require production in Virginia, which is greater than 100 miles away. Ex. 3, Nov. 28, 2018 Objection Letter from Nelson. Second, Rosette objected to the subpoena because it seeks "records belonging to Big Picture and Ascension," who are appealing the Court's decision denying their motion to dismiss based on sovereign immunity. Ex. 3. And third, Rosette objected on the basis of attorney-client privilege even though its correspondence indicated that it did not complete a review because of its other objections. For the reasons explained below, Plaintiffs request the Court to: (1) strike Rosette's

---

the Tribe in January 2016. *Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*, 974 F.Supp.2d 353, 356 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014).

objections to the subpoena and (2) order Rosette to make a full and complete production of the requested documents within 11 days of the entry of any order.

**Argument**

### A.    The subpoena requires compliance within 100 miles of where Rosette "regularly transacts business."

Rule 45 provides that a subpoena may command the production of documents or electronically stored information "at a place within 100 of where the person resides, is employed, or *regularly transacts business in person*." Fed. R. Civ. Proc. 45(c)(1)(A)(2)(A). Here, there is no deficiency with the geographical scope of the subpoena because it requires compliance at Plaintiffs' counsels' office in Fairfax, Virginia, which is within 100 miles of where Rosette "regularly transacts business" as it maintains an office in Washington, D.C. *See, e.g., Our Firm*, Rosette, LLP, https://www.rosettelaw.com/our-firm/ (last visited Dec. 4, 2018) ("Rosette, LLP is a leading majority Indian owned national law firm representing tribal governments and tribal entities with offices in Arizona, California, Michigan, Oklahoma and Washington, D.C.").

Rosette's objection that its headquarters are in Arizona ignores the language of Rule 45, which does not limit the place for compliance to within a 100 miles of a company's headquarters. At least one court has rejected this exact argument. *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14 CV 859 RWS, 2016 WL 2609795, at *2 (E.D. Mo. May 6, 2016). In that case, the third party objected to compliance with the subpoena and argued that the subpoena "did not comply with the geographic limits requirement of Rule 45 because it resides in Irving, Texas, which is where its corporate headquarters and all of its decision-makers are based." *Id*. at *1. Although it was headquartered elsewhere, the court found it had jurisdiction under the "regularly transact

business" language of Rule 45 because the third-party company "operate[ed] a facility within 100 miles where compliance of the subpoena [was] requested." *Id.* at *2.[4]

In short, "the Federal Rules of Civil Procedure permit a party to subpoena *documents* regardless of where those documents are located, provided that the documents are within the control of someone subject to the issuing court's jurisdiction." *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 240 (D.D.C. 2013). Here, regardless of Rosette's headquarters or the location of the documents, Rosette is subject to this Court's jurisdiction because it regularly transacts business in Washington, D.C., where it maintains an office with at least five attorneys. *Our Professionals*, Rosette, LLP, https://www.rosettelaw.com/professionals/ (last visited Dec. 4, 2018) (listing Washington, D.C., as the office for two partners and three associates). Accordingly, the Court has jurisdiction to strike the objection and order compliance with the subpoena.

**B.      Rosette lacks standing to assert any claim of tribal sovereign immunity.**

As explained above, the Court has already determined that neither Big Picture nor Ascension Technologies is entitled to sovereign immunity. *Williams*, 329 F. Supp. 3d at 283. Even if they were entitled to immunity, however, Rosette lacks standing to assert sovereign immunity on behalf of Big Picture or Ascension, who were served with a copy of the subpoena, but never raised an objection to the subpoena. *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179

---

[4] *See also Halliburton Energy Servs., Inc. v. M-I, LLC*, No. H06MC00053, 2006 WL 2663948, at *2 (S.D. Tex. Sept. 15, 2006) (finding a person regularly transacted business in Houston where he traveled "to the city approximately four times each year and stay[ed] for approximately ten days each time"); *Cf. Bostian v. Suhor Indus., Inc.*, No. 07–151, 2007 WL 3005177, at *1 (N.D.Okla.2007) (two visits a year insufficient); *Nissan Fire & Marine Ins. Co., Ltd. v. Fortress Re, Inc.*, No. M8–85, 2002 WL 1780084, at *3 (S.D.N.Y. Aug. 14, 2002) (four times in five years insufficient); *Regents of the Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 465 (S.D.Cal.1996) (ten times in seven years insufficient).

F.3d 1279, 1290 (11th Cir. 1999) ("Parties other than a foreign sovereign ordinarily lack standing to raise the defense of sovereign immunity.").

In a slightly different context, this Court recently addressed whether a non-tribal defendant had standing to object to discovery based on the purported tribal sovereign immunity of a tribal lender. *Pettus v. Servicing Co., LLC*, No. 3:15CV479(HEH), 2016 WL 7234106, at *2 (E.D. Va. Feb. 9, 2016). In that case, the defendant argued that tribal sovereign immunity barred the Court from compelling the defendant "to respond to any discovery requests" related to a tribal lender, and that the plaintiffs' could not "circumvent [the tribal lender's] immunity by obtaining its documents from" the defendant. *Id*. In rejecting this argument, the Court held that the defendant "lack[ed] standing to raise sovereign immunity" on behalf of the tribal lender. *Id*. at *1. In doing so, the Court explained "[a]s a general rule, a litigant must 'assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal interests of others.' " *Id*. at *2 (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). Because the tribal lender could have moved to quash the discovery and protect its immunity, but it "elected not to do so," the Court found that the defendant could not invoke the tribal lender's claim to sovereign immunity. *Id*.

Like the defendant in *Pettus*, Rosette lacks standing to assert sovereign immunity on behalf of Big Picture and Ascension, who failed to lodge any objection to the subpoena.

C.     **Tribal sovereign immunity does not apply to documents in the possession of non-tribal third parties.**

It is well established that Indian tribes enjoy sovereign immunity from "suits." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978). The Supreme Court has explained "[t]he general rule is that a suit is against a sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act." *Miccosukee Tribe of Indians of Fla. v.*

*United States*, 698 F.3d 1326, 1330 (11th Cir. 2012) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

Even though the definition of "suit" is broad, as the Eleventh Circuit explained in *Miccosukee*, there is no derivative immunity when a sovereign voluntarily discloses information to third parties. 698 F.3d at 1330. In *Miccosukee,* a tribe sought to quash a subpoena directed at its financial institution by the IRS, who was investigating the tribe to determine whether the tribe complied with its withholding requirements. *Id*. In rejecting the tribe's argument that its bank records were protected by the doctrine of sovereign immunity, the Eleventh Circuit explained:

> [T]he summonses are not suits against the Tribe. The summonses seek no judgment against the Tribe. Nor do the summonses order the Tribe to appear before a tribunal. The Tribe argues that the summonses will compel the Tribe to reveal confidential financial information and will force the Tribe to restructure its banking practices to keep tribal funds on the reservation, but these arguments fail.
>
> The Tribe voluntarily disclosed its confidential financial information to third-party financial institutions before these summonses were issued. ***After disclosure, that information became the property of the third parties.*** *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 683 (11th Cir. 1984). And if the Tribe chooses to restructure its banking practices, it does so as an exercise of its own discretion, not under court order.

*Id*. at 1330–31 (emphasis added).[5]

---

[5] In a slightly different context, the Second Circuit reached the same conclusion. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 (2d Cir. 2012). In that case, the district court denied a motion to quash filed by a foreign sovereign, Argentina. *Id*.  The subpoenas were issued by a post-judgment creditor of Argentina to its financial institutions, seeking to "locate Argentina's assets and accounts, learn how Argentina moves its assets through New York and around the world, and accurately identify places and times when those assets might be subject to attachment and execution[.]" *Id*. In rejecting Argentina's argument that the subpoenas infringed upon its sovereign immunity, the Second Circuit held "because the district court ordered only discovery, not the attachment of sovereign property, and because that discovery is directed at third-party banks, Argentina's sovereign immunity is not affected." *Id*. at 203. Although Republic of Argentina involved a different type of immunity, the doctrine of foreign sovereign immunity is closely related to tribal immunity. *See, e.g.*, *Kiowa Tribe of Ok. v. Mfg. Techs., Inc.*, 523 U.S. 751, 759 (1998) ("In considering Congress' role in reforming tribal immunity, we find instructive the problems of sovereign immunity for foreign countries.").

Courts in other jurisdictions have reached similar conclusions, but for a different reason. *See, e.g., Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 (10th Cir. 2014) (noting in that "we see no reason why an Indian tribe should be able to 'shut off an appropriate judicial demand for discovery' served on a tribal official, rather than against the Tribe itself"); *In re Miscellaneous Subpoenas*, No. 3:16-MC-00003-MAM, 2016 WL 4154889, at *3 (D.S.D. Aug. 1, 2016) (observing "immunity from process does not apply to individual tribal members").[6] Most notably, a court has recently denied a motion to quash filed by a law firm who represented the Hualapai Indian Tribe of the Hualapai Indian Reservation. *Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 3551305, at *1 (D. Nev. June 5, 2015), *objections overruled*, No. 215CV00663JADGWF, 2016 WL 890921 (D. Nev. Mar. 7, 2016).

In *Grand Canyon Skywalk*, the defendant served a subpoena for documents in the possession of the law firm, prompting it to file a motion to quash "on the grounds that the Hualapai Tribe and [the law firm], as its counsel, cannot be required to respond to the subpoena under the doctrine of tribal sovereign immunity." *Id*. After engaging in extensive analysis on the issue, the court held that the subpoena on the law firm did not violate the tribe's sovereign immunity. *Id*. at *9 ("The subpoena served on the Hualapai Tribe's attorneys, Gallagher & Kennedy, does not violate Hualapai Tribe's sovereign immunity from suit and therefore is not subject to being quashed on that ground."). In doing so, the court observed that "a federal civil subpoena served on an individual tribal officer or employee, as opposed to the tribe itself, does not trigger tribal

---

[6] *See also Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999) ("Parties other than a foreign sovereign ordinarily lack standing to raise the defense of sovereign immunity.").

sovereign immunity." *Id*. By extension, the court reasoned that the doctrine of tribal sovereign immunity could not be asserted by a law firm.

These cases are directly on point. Like *Miccosukee*, Plaintiffs do not seek anything within the possession or control of a tribe, nor do the Plaintiffs seek to restrain the tribe or compel it to do anything. Plaintiffs' Counsel searched extensively to find any caselaw contrary to *Miccosukee* but could not find a *single* case where a court held that tribal immunity from "suits" applied to discovery issued to a non-tribe. And even if it did, a federal subpoena to a law firm representing a tribal entity does not implicate tribal sovereign immunity.

### C.   Neither Rosette nor its clients may claim privilege to documents provided to third-parties.

For the attorney-client privilege to apply, the communication "must have been made in confidence." *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998). A party waives the privilege if it voluntarily produces the privileged document to a third party. *Scott & Stringfellow, LLC*, 2011 WL 1827900, at *2 (citing *New Bank of New England v. Marine Midland Realty Corp.,* 138 F.R.D. 479, 482 (E.D. Va. 1991)). When a party knowingly discloses privileged material to a third-party, it surrenders the privilege with respect to the world at large—it cannot selectively disclose the material and still assert privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). In addition, the Fourth Circuit has held that, "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information, as well as 'the details underlying the data which was to be published' will not enjoy the privilege." *United States v. Under* Seal, 33 F.3d 342, 354 (4th Cir. 1994) (quoting *United States v. (Under Seal),* 748 F.2d 871, 875 (4th Cir. 1984)). This means that "the details underlying the published data are the communications relating the data, the document . . . to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the

preparation of the document. Copies of other documents, the contents of which were necessary to the preparation of the published document will also lose the privilege." *United States v. (Under Seal),* 748 F.2d at 875, n.7.

As explained above, Rosette served as counsel for Red Rock, Big Picture Loans, and Ascension Technologies—three separately incorporated entities. However, Rosette did not have an attorney-client relationship with Martorello, Bellicose Capital, SourcePoint or any other entity owned by Martorello. Likewise, Rosette did not have an attorney client relationship with the third-party investors who provided the capital used to make the loans. Discovery has confirmed that Rosette communicated via e-mail with Martorello and his counsel, as well as third party investors. *See, e.g.*, Ex. 4, 5, & 6 (filed under seal). Such communications are not protected by the attorney-client privilege.[7] Accordingly, Plaintiffs request the Court to strike the attorney-client privilege objection and order compliance with the subpoena.

<u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request the Court to enter an order striking Rosette's objections to subpoena dated November 6, 2018, and to further order Rosette to fully

---

[7] Rosette's privilege objection fails for an additional reason—it failed to provide a privilege log in accordance with Rule 45. Fed. R. Civ. Proc. 45(e)(2) ("A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must… describe the nature of the withheld documents…"). Failure to timely and adequately log assertions of privilege may result in waiver of privilege—an outcome that is not rare in this District. *Moore v. Shapiro & Burson, LLP*, 2015 WL 6674709, at *1 (Dkt. 91, E.D. Va. Oct. 29, 2015) (finding privilege waived due to failure to timely provide log); *Burke v. Fed. Nat'l Mort. Ass'n*, No. 3:16-cv-00153 (E.D. Va. Oct. 6, 2016) (Dkt. 91) (finding privilege waived due to failure to provide privilege log with responses and insufficient descriptions); *Brainware, Inc. v. Scan-Optics, Ltd*., 2012 WL 2872812, at *4 (E.D. Va. July 12, 2012) (finding privilege waived where party identified additional privileged documents on a supplemental log); *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252 (E.D. Va. 2012) (finding privilege waived where party failed to provide author and recipient information); *Sectek Inc. v. Diamond*, 2016 WL 5897763, at *3 (E.D. Va. Oct. 6, 2016) (finding waiver because a party did not produce "a privilege log contemporaneously with its initial production of documents.").

and completely respond to the subpoena within 11 days of the entry of an order on this motion.

Respectfully submitted,
**PLAINTIFFS**

_____*/s/ Kristi C. Kelly*_____
Counsel

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email:  casey@kellyandcrandall.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2018, a copy of the foregoing will be delivered via electronic mail to the following:

Timothy A. Nelson
The Nelson Law Group, PLLC
21 West Coolidge Street
Phoenix, Arizona 85013
Telephone: 888-956-7770
E-mail: tim@nelsonlawsolutions.com
*Counsel for Rosette, LLP*

Terry Goddard
Goddard Law Office, PLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
Telephone: 602-258-5521
E-mail: terry.goddard@dentons.com
*Counsel for Rosette, LLP*

Richard L. Scheff, Esq.
Jonathan P. Boughrum, Esq.
David Foster Herman, Esq.
Michael C. Witsch, Esq.
Armstrong Teasdale LLP
1500 Market Street, 12th floor East Tower
Philadelphia, PA 19102
Telephone: (215) 246-3467
Facsimile: (215) 569-8228
Email: rscheff@armstrongteasdale.com
Email: jboughrum@armstrongteasdale.com
Email: dherman@armstrongteasdale.com
Email: mwitsch@armstrongteasdale.com
*Counsel for Matt Martorello*

Justin Alexander Gray, Esq.
Anna Marek Bruty, Esq
Rosette LLP
25344 Red Arrow Highway
Mattawan, Michigan 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: jgray@rosettelaw.com
Email: abruty@rosettelaw.com
*Counsel for Big Picture Loans, LLC &*
*Ascension Technologies, LLC,*

David N. Anthony, Esq.
Timothy J St. George, Esq.
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com
Email: tim.stgeorge@troutmansanders.com
*Counsel for Defendants*

Craig Thomas Merritt, Esq.
Harrison Mann Gates, Esq.
Christian & Barton LLP
909 E Main Street, Suite 1200
Richmond, VA 23219
Telephone: (804) 687-4128
Facsimile: (804) 697-6128
Email: cmerritt@cblaw.com
Email: hgates@cblaw.com
*Counsel for Big Picture Loans, LLC &*
*Ascension Technologies, LLC*

Hugh McCoy Fain, III, Esq.
John Michael Erbach, Esq.
Maurice Francis Mullins, Esq.
Spotts Fain PC
411 E Franklin Street
Richmond, VA 23218

Telephone: (804) 788-1190
Email: hfain@spottsfain.com
Email: jerbach@spottsfain.com
Email: cmullins@spottsfain.com
*Counsel for Matt Martorello*

                                      */s/ Kristi C. Kelly*
                                      Kristi C. Kelly, Esq.
                                      KELLY & CRANDALL, PLC
                                      3925 Chain Bridge Road, Suite 202
                                      Fairfax, VA 22030
                                      (703) 424-7572
                                      (703) 591-0167 Facsimile
                                      Email: kkelly@kellyandcrandall.com
                                      *Counsel for Plaintiffs*